IN THE UNITED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Mackenzie Drake** )| |
| individually )| |
| and on behalf of all persons )| |
| similarly situated ) | CASE NO 16 CV 5317 |
| as class representative under )| |
| Illinois Law and/or as ) | The Honorable |
| members of the Collective as permitted )| |
| under the Fair Labor Standards Act; )| |
| )| |
| Plaintiff, )| |
| )| |
| vs. )| |
| )| |
| **Angel Funding & Leasing Inc.** )| |
| **And** ) | **JURY TRIAL DEMANDED** |
| **Midwest Moving and Storage Inc.** ) | **ON ALL COUNTS** |
| Defendants. )| |

**CLASS AND COLLECTIVE ACTION COMPLAINT**

NOW COMES the Plaintiff, **Mackenzie Drake**, individually and on behalf of all others similarly situated, as class representative, by and through his undersigned counsel of record, upon personal knowledge as to those allegations in which he so possesses and upon information and belief as to all other matters, pursuant to §216(b) of the Fair Labor Standards Act (hereinafter "FLSA"), the Illinois Minimum Wage Law 820 ILCS 105/1 *et seq* (hereinafter "IMWL" ) and brings this cause of action against Defendants **Angel Funding & Leasing Inc. (Hereinafter "Angel" or "Angel Funding") And Midwest Moving and Storage Inc.**., (hereinafter "Midwest" or "Midwest Moving"), and in so doing states the following:

## NATURE OF THE ACTION

1.  Plaintiff, **Mackenzie Drake** alleges individually and on behalf of himself and other similarly situated current, former and future "mover" employees of the Defendants, (Hereinafter references to "Plaintiff" are inclusive of both Individual Plaintiff and those employees that are similarly situated to the Individual Plaintiff (similarly situated in that those employees with the title "mover" and not receiving overtime wages) that he, under both federal and state wage laws, is entitled to be paid time and half for all hours worked over forty (40) hours per week, but Defendants failed to pay overtime wages, rather paid "straight time" wages for all work including work weeks in which he worked over 40 hours.

2.  This action is brought as a class action pursuant to the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL").

3.  This action is also brought as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, 207 and 216(b) to recover unpaid wages for overtime pay which was not compensated at the overtime rate of pay.

4.  Plaintiff's federal FLSA claims are brought as "opt-in" collective action claims pursuant to the FLSA while state law claims are brought as a conventional class action.

5.  Plaintiff, in his class claims, request injunctive and declaratory relief, and compensation and credit for all uncompensated work required, suffered, and/or permitted by Defendants, liquidated and/or other damages as permitted by applicable law, restitution and payment of all benefits Defendants obtained from their unlawful business practices and attorneys' fees and costs.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 and 1337 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C 1332 and 1367.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 based on 29 U.S.C. 216(b) known as the Fair Labor Standards Act (FLSA).

7.     This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C 1332 and 1367 and Plaintiffs seek application of the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL").

8.     The Court is authorized to issue a declaratory judgment.

9.     Venue is proper in this Court.

10.    Defendants do business and are residents of this District and Division of Federal Court.

## FACTS REGARDING THE PLAINTIFF

11.    Plaintiff is a resident of the State of Illinois.

12.    Plaintiff was employed by Defendants as a "Mover" beginning on or around 6/19/15 and ending on or around 1/27/16 for asking for his overtime wages.

## ANGEL AND/OR MIDWEST CORPORATE FACTS

13.    Defendant, Angel Funding and Leasing Inc., ("Angel" or "Angel Funding") is a corporation or business which does business in Illinois.

14.    Defendant, Midwest Moving and Storage Inc., ("Midwest" or "Midwest Moving") is a corporation or business which does business in Illinois.

## JOINT EMPLOYER FACTS

15.     Plaintiff alleges that the Angel Funding and Midwest Moving are Joint-Employers (as defined by the FLSA) of the Plaintiff and the Class of "movers".

16.     Plaintiff alleges that the Defendants are Joint employers and/or had a joint employment relationship over the Plaintiff and Class. (*See* 29 C.F.R. § 791.2).

17.     The Department of Labor regulations provides guidance as to when a joint employer relationship exists which includes:

Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
(1) Where there is an arrangement between the employers to share the employee's services, as for example, to interchange employees; or
(2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
(3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reasons of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b).

18.     Here the Defendants share the employees (Plaintiff and Class) services, in that Angel provides the employees and administers the payroll for "its employees" but all the work done is done for Midwest.

19.     Angel operates as an employment agency for Midwest providing many employees for the jobs Midwest is contracted to perform.

20.     Midwest oversaw, directed and supervised all of the work of the Plaintiff and Class. Angel Funding had no supervisory role in Plaintiff and Classes' work.

21.     Plaintiff and Class work was performed for the benefit of both employers.

22.    While Plaintiff received paychecks from Angel Funding, Plaintiff filled out an employment application for Midwest Moving.

23.    Plaintiff was required to sign a "Promotional Release Consent" for Midwest, not for Angel Funding. The promotional release did not mention Angel Funding, and possible retraction of the Promotional Release Consent was to be given to a Midwest email address and a Midwest employee by the name of "Ruth".

24.    Plaintiff filed out an emergency contact form for Midwest, not Angel Funding.

25.    Plaintiff authorized release of employment (background) records by a third party HR entity known as "Hire Right Inc.". These records were ordered, received and paid for by Midwest Moving and not Angel Funding.

26.    Plaintiff received (or had in his personnel file) a policy and procedures sheet from Midwest, which again did not mention or list Angel funding. Plaintiff did not receive any policy and procedures, or handbook from Angel Funding.

27.    Midwest Moving policy and procedure required Plaintiff to wear a Midwest uniform each day of work. The Midwest's policy and procedure also had numerous other orders and rules for Plaintiff to follow including not modifying the uniform, restricting hats worn to be only those with Midwest logo and prohibiting mixing of uniform and non-uniform clothing.

28.    The policy and procedure of Midwest had several provisions in which a Midwest supervisor had authority to make decisions about the appearance of the Plaintiff and Class, including the last rule which reads "Midwest moving supervisors have the authority and expectation to send employees or apprentices home without pay

to change their clothes if the employees are not dressed or groomed appropriately per the details of this policy".

29.     Plaintiff received and was required to wear of a Midwest Moving uniform, but the Plaintiff was charged a fee of $25.00 for that uniform by Angel Funding, on Angel funding's payroll documents/paychecks.

30.     Plaintiff received a photo/ID badge for Midwest, not for Angel Funding.

31.     Midwest Moving Policy and procedure required Plaintiff and Class to wear the ID badge every day of work.

32.     The ID badge issued to Plaintiff by Midwest lists "Tom Pera" as the emergency contact. Tom Pera is not an employee of Angel Funding.

33.     The ID badge issued to Plaintiff by Midwest list an emergency phone number, which is not a phone number for Angel Funding, rather is a Midwest phone number.

34.     Plaintiff is pictured in the Photo ID badge wearing a Midwest Moving T-Shirt, not an Angel Funding shirt. Plaintiff's Photo ID badge also has in the foreground a picture of a Midwest moving truck with a Midwest moving logo on that truck, not a truck for Angel Funding.

35.     Plaintiff was provided a Midwest Moving T-Shirt while Angel Funding did not provide Plaintiff with a T-Shirt or any uniform.

36.     Defendant Corporations share a Human Resources manager, whose communications refer to her position as being a HR representative for Midwest, not Angel Funding.

37. Defendants Corporations listings on the Illinois Secretary of State corporation website are duplicate for President and president's address, thus it appears Defendants share a president and that president uses one address for his work for both corporations.

38. A determination of whether employment by a group of employers is to be considered joint employment or separate and distinct employment for purposes of the FLSA, however, depends upon all the facts in the particular case. 29 C.F.R. § 791.2(a)

39. Joint employment is supported further by the sharing of facilities and other management employees.

## **FAILURE TO PAY OVERTIME**

40. Plaintiff worked as an hourly non-exempt employee.

41. Plaintiff was paid $14.50 per hour for all hours worked less than 40 hours.

42. $14.50 was Plaintiff's regular rate of pay.

43. Plaintiff was paid $14.50 per hour for all hours over 40 hours.

44. Defendant's failure to pay proper rate of overtime pay is not isolated to Plaintiff, rather is applicable in the same manner and method to ALL Defendant employees working overtime in the Mover position.

45. Many "Movers" work overtime.

46. Plaintiff was not employed as a Driver.

47. Plaintiff was not employed as a Driver's Helper.

48. Plaintiff was not employed as a Loader.

49.    Likewise other "Mover" employees also were not paid overtime, rather were paid regular wages.

## SPECIFIC WEEK BY WEEK OVERTIME OWED

50.    Because some courts have found that an overtime claim must include highly factually specific facts, such as the week by week declaration of overtime owed and amounts of overtime owed, Plaintiff pleads these facts.

51.    Plaintiff was hired on or around 6/19/15.

52.    This pleading is NOT a complete and total listing of all weeks Plaintiff worked overtime and is owed overtime wages, rather is a listing of the weeks for which Plaintiff has records of hours and wages owed. Plaintiff will provide further week by week disclosure in subsequent testimony.

53.    Defendants paid Plaintiff and Class on a weekly basis.

54.    During the week of 1/10/16 to 1/16/16 Plaintiff worked a total of 54.75 hours.

55.    Plaintiff's regular rate of pay is/was $14.50 per hour.

56.    During the week of 1/10/16 to 1/16/16 Plaintiff was paid straight time for the 14.75 hours of overtime, thus Plaintiff is owed half time for 14.75 hours for this week of work.

57.    During the week of 9/20/15 to 9/26/15 Plaintiff worked a total of 46.00 hours.

58.    Plaintiff's regular rate of pay is/was $14.50 per hour.

59.    During the week of 9/20/15 to 9/26/15 Plaintiff was paid straight time for the 6.00 hours of overtime, thus Plaintiff is owed half time for 6.00 hours for this week of work.

60.    During the week of 7/5/15 to 7/11/15 Plaintiff worked a total of 49.75 hours.

61. Plaintiff's regular rate of pay is/was $14.50 per hour.

62. During the week of 7/5/15 to 7/11/15 Plaintiff was paid straight time for the 9.75 hours of overtime, thus Plaintiff is owed half time for 9.75 hours for this week of work.

63. During the week of 7/26/15 to 8/1/15 Plaintiff worked a total of 73.50 hours.

64. Plaintiff's regular rate of pay is/was $14.50 per hour.

65. During the week of 7/26/15 to 8/1/15 Plaintiff was paid straight time for the 33.50 hours of overtime, thus Plaintiff is owed half time for 33.50 hours for this week of work.

66. Plaintiff worked overtime other weeks, for which Plaintiff does not have payrecords for at this time.

67. Defendants list Plaintiff's last day of work as being on 1/27/16.

68. Plaintiff was terminated for asking for his overtime wages, but Plaintiff secured employment shortly after making higher wages, thus Plaintiff defers on filing a claim of FLSA retaliation for efficiency of the court.

69. In Plaintiff's last week of work, Plaintiff worked one full day (likely 1/27/16), and was never paid a dime for this work. Thus Plaintiff is owed minimum wages for the last day of work in early 2016. (this is not a class claim, rather is limited to Plaintiff individually).

FACTS RELATED TO CLAIMS OF MOTOR CARRIER EXEMPTION

70.    Plaintiff was not initially told that his overtime hours/work would be paid at a straight time rate.

71.    After Plaintiff discovered his lack of overtime wage payments Plaintiff was told that he was not receiving overtime wages because of the "Motor Carrier Exemption" to the FLSA.

72.    It appears that under the Motor carrier exemption of the FLSA can be allowed if the goods are being shipped in interstate commerce AND the employee is involved in the ensuring the safety of the vehicle, the motor carrier exemption can apply to some employees during some weeks of employment.

73. In determining whether an exemption exists, the employer must prove the applicability of all exemptions and that all exemptions are subject to a rule of strict construction and that any doubt will be resolved in favor of the employee.

74.    Defendants error is that Plaintiff and the Class were NOT involved in ensuring the safety of the vehicles.

75.    Plaintiff and Class were not "Loaders" as per 29 C.F.R. § 782.2 (b)(3) (2007).

76.    Plaintiff and the Class were not charged, responsible nor even allowed to load the moving trucks.

77.    The duties of safe and secure loading of the trucks was held by other employees, including the drivers of those trucks.

78.    Plaintiff and Class of Movers were charged with delivery of goods to the area near the truck, but not loading of the trucks.

79.   The Plaintiff's job description, found in the Plaintiff's Personnel file, listed the job title as "mover" not loader. Further the job description did not list any duty to exercise judgement and discretion in planning and building a balanced load or in placing, distributing, or securing pieces of freight in such a manner that the safe operation of the vehicles in any manner.

80.   Alternatively, the Motor Carrier Exemption (MCE) would not apply to the Plaintiff and/or Class for a number of other reasons:

   a.   Plaintiff and Class are not covered by the MCE as the Plaintiff and Class are employees who may unload vehicles or those who load but are not responsible for the proper loading of the vehicle.

   b.   Plaintiff and Class were not responsible for exercising judgement and discretion in planning and building a balanced load or in placing, distributing, or securing pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized.

   c.   Plaintiff and Class were not classified and titled as "Loaders".

      i.   Plaintiff's application was for a position of "mover" not "loader".

      ii.   Plaintiff's personnel department designated job title was "mover" not loader.

      iii.   Plaintiff's listing on Defendants personnel file document which appears to be a screen shot of some Defendants computer file for Plaintiff lists his job description as "mover" not "loader".

d.  The vehicles loaded were not Qualifying vehicles such as include those: (a) weighing over 5 tons; (b) designed to transport either (*i*) more than 8 individuals, for pay, or (*ii*) more than 15 individuals; or (c) used to transport certain hazardous materials

e.  This non-qualifying vehicle fact is supported DOL changed regulations explaining that the MCE cannot apply in a workweek in which an employee's work is on a non-qualifying vehicle.

f.  DOL regulations require a daily or weekly qualification of the MCE for certain employees, for which Plaintiff and Class did not qualify or which Defendant failed to even gauge/review.

g.  The regulations state that "an employee who performs such duties involving small vehicles for the entire week or part of the week must receive overtime pay for hours worked over 40 in that week. Plaintiff worked on "small vehicles" on occasion, yet did not receive overtime for those weeks.

h.  In that the amount interstate commerce engaged in by Defendants was too small to matter.

## **CLASS AND COLLECTIVE ACTION ALLEGATIONS**

### **A.      Class Allegations under IMWL**

81. Plaintiff brings state wage law claims, pursuant to the Illinois Minimum Wage Law 820 ILCS 105/1., as individual and class action. The Class is defined as all current, former and future "movers" of Defendants paid an hourly wage who were not paid proper rate of overtime pay for all hours over forty per week.

82. Plaintiff's Class includes claims for all owed wages due for three (3) years prior to the filling of this complaint and until an judgment is entered in this case (the "Class" and "Class Period," respectively) (hereinafter, "Plaintiff" or "Plaintiffs" refers to both Named Plaintiffs and the Class).

83. Excluded from the Class are Angel andor Midwest legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Class period has had, a controlling interest in ANGEL ANDOR MIDWEST; the Judge to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper request for exclusion from the Class.

84. Also excluded from the class are those "movers" that received Overtime wages at an overtime rate, which are believed to include those allowed to be hired/transferred to a Union represented positions, which Plaintiff did not hold, but whom received overtime pay.

85. **Numerosity:** The persons in the Class identified above are geographically diverse and so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants. Upon information and belief, there are hundreds of members of the Class based upon the fact that during the Class Period ANGEL ANDOR MIDWEST had dozens of employees working most jobs and many jobs were occurring at the same time and nearly all employees worked some overtime. The numerosity is also demonstrated by the ANGEL ANDOR MIDWEST having a work force of 100 + employees and due to the high "turnover" of these positions the

number of potential class members is increased substantially. It is estimated that there are at least 200 persons in the class. The large size of the work force (class) is shown also by Midwest Moving bidding on and receiving contracts for very large moving jobs, such as moving the "Malcom X College" in 2015.

86.     **Commonality**: There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual members.  The questions of law and fact common to this Class that predominate over any question solely affecting individual members of the Class, including but are not limited to:

a.  whether the Defendants employed Plaintiff and the Class within the meaning of the IMWL.

b.  what proof of hours worked is sufficient where employers fail in their duty to maintain time records.

c.  whether the Plaintiff and the Class were paid overtime wages pursuant to the overtime provisions of the IMWL.

d.  whether Defendant's engaged in a continuing policy, pattern or practice of failing to pay all overtime wages at the proper rate of pay which includes all compensation;

87.  **Typicality**:   The claims of Representative Plaintiff are typical of the Class.

88.   **Adequacy:** Representative Plaintiff will fairly and adequately represent the interests of the Class.

89.   **Superiority:**  A class action is superior to other available methods for their fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation, where individual Plaintiff lack the financial resources to vigorously prosecute separate lawsuits in Court against a corporate Defendant like ANGEL ANDOR MIDWEST.

90.   The Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

91.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of this litigation where no individual employee can justify the commitment of the large financial resources to vigorously prosecute a lawsuit in Federal Court against the corporate Defendants.

92.   The Defendants have acted or has refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

93.   IMWL violation claims are brought and maintained as a class for all IMWL claims asserted by the Plaintiff.

94.   The Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

95.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of this litigation

where no individual employee can justify the commitment of the large financial resources to vigorously prosecute a lawsuit in against the corporate Defendants.

96.     The Defendants have acted or have refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## B. The FLSA Collective Action

97.     Plaintiff brings claims for relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA (29 U.S.C. § 216(b)), on behalf of all employees of ANGEL ANDOR MIDWEST who were, are, or will be employed by ANGEL ANDOR MIDWEST during the period of three (3) years prior to the date of commencement of this action through the date of judgment in this action, who were not compensated at one-and-one-half times the regular rate of pay for all work performed in excess of forty (40) hours per work week.

98.     FLSA violation claims are brought and maintained as an "opt-in" collective action pursuant to § 16(b) of FLSA, 29 U.S.C. § 216(b), for all FLSA claims asserted by the Plaintiff, since the FLSA claims of the Plaintiff are similar to the FLSA claims of all "mover" employees employed by ANGEL ANDOR MIDWEST.

99.     Defendant is liable for improperly compensating Plaintiff and FLSA Collective under the FLSA, and as such notice should be sent to the FLSA Collective. There are numerous similarly situated current and former employees of ANGEL ANDOR MIDWEST who have been denied proper payment of the overtime wages. These current, former and future employees would benefit from the

issuance of a court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. The similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

100. The Defendant's unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting all Defendants' employees.

101. Defendant's consented, were knowledgeable of that they were paying the overtime rate of pay incorrectly.

102. Plaintiff is paid on an hourly pay rate and is classified as "non-exempt" employee by Defendant.

103. Plaintiffs and the class employees were not paid the proper rate of overtime wages.

104. This is a FLSA violation because the Plaintiff works beyond forty (40) hours, thus Plaintiff is owed time-and-half of his regular pay for ALL hours beyond 40.

105. The FLSA defines the "regular rate" as all remuneration for employment paid to or on behalf of the employee, before any deductions from wages are made. (See 29 U.S.C. §207(e); 29 C.F.R. §778.109.)

106. Further this also a violation of the Plaintiff's rights under Illinois Minimum Wage law and Illinois over-time wage law.

**ANGEL ANDOR MIDWEST Actions were Willful, Knowledgeable and/or Had Reckless Disregard for FSLA Regulations**

107. ANGEL ANDOR MIDWEST required and permitted Plaintiff, the Class, and the FLSA Collective, to work more than 40 hours in a week. ANGEL ANDOR

MIDWEST did not pay Plaintiff, the Class, and the FLSA Collective the proper overtime rate for all of these overtime hours.

108. ANGEL ANDOR MIDWEST unlawful conduct has been uniform, widespread, repeated and consistent.

109. ANGEL ANDOR MIDWEST's willful violations are especially demonstrated by their knowledge that its employees were not paid the correct rate of pay.

110. All allegations and claims alleged herein should be read in the alternative, to the extent such an interpretation is necessitated by law and permitted under Federal Law, Illinois Law and other state laws.

111. All allegations plead herein are plead with personal knowledge as to those allegations to which Plaintiff has such knowledge and based upon "information and belief" as to all other allegations.

**FIRST CLAIM FOR RELIEF**
**Class Action Against Defendant**
**Under the Illinois Minimum Wage Law "IMWL"**

112. Plaintiff and class  reallege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

113. Plaintiff and Class are or were employees of the Defendant pursuant to the IMWL.

114. Plaintiff and Class are or were employed by ANGEL ANDOR MIDWEST as a Mover employees.

115. It is and was at all relevant times, a policy of ANGEL ANDOR MIDWEST to not pay its "Mover" employees at an overtime rate of pay

116. The Defendants unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting most if not all of the Defendants' employees.

117. As a result of the foregoing, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

118. Illinois law contains a three-year statute of limitations regardless of whether the violation was willful. 820 ILCS 105/12(a).

**SECOND CLAIM FOR RELIEF**
**On Behalf of Plaintiff and All Opt-In Employees**
**Against Defendant ANGEL ANDOR**
**MIDWEST**
**As a Collective Action**
**(FLSA Claims, 29 U.S.C. § 201 et seq.)**

119. Plaintiff and Class reallege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

120. The Collective claims include all plead claims found in this complaint which fall within the coverage of FLSA.

121. The Collective claims include all mover employees which Defendants have failed to pay at an overtime rate of pay which does not include the added compensation earned as commissions or earned bonuses.

122. At all relevant times, Defendants ANGEL ANDOR MIDWEST has been, and continues to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants has employed, and continues to employ, "employee[s]," including the Plaintiffs, and each of the members of the FLSA

Opt-Ins, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants has had gross operating revenues in excess of Five Hundred Thousand and no/100 Dollars ($500,000.00).

123. At all relevant times, Defendants has engaged, and continue to engage, in a willful policy, pattern, or practice of requiring their employees, including the Plaintiffs and members of the prospective FLSA Class, to work in excess of forty (40) hours per week without compensating such employees to pay its employees at an overtime rate of pay which does not include the added compensation earned as commissions or earned bonuses.

124. At all relevant times, the work performed by retail employees including the Plaintiffs and prospective FLSA Opt-Ins, employed at Defendant were, and continue to be, required or permitted by Defendants, for the benefit of Defendants, directly related to such employees' principal employment with Defendants, and as an integral and indispensable part of such employees' employment of Defendants.

125. As a result of the Defendant willful failure to record or compensate its employees – including Plaintiff and members of the prospective FLSA Class – employed by Defendant for all hours worked, Defendant has violated, and continues to violate, the maximum hours provision of the FLSA, 29 U.S.C. § 207(a)(1), and § 215(a).

126. As a result of the Defendant's willful failure to record, report, credit, and/or compensate its employees employed by Defendants, including the Plaintiffs and members of the prospective FLSA Class, Defendants has failed to make, keep and

preserve records with respect to each of their employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, including 29 U.S.C. §§211(c) and §§ 215(a).

127.   The foregoing conduct, as alleged, violated the FLSA, 29 U.S.C. §§ 201 et seq.

128.   Plaintiff, on behalf of himself and all FLSA Opt-Ins, seek damages in the amount of their respective unpaid compensation, plus liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

129.   Plaintiff, on behalf of himself  and all FLSA Opt-Ins, seek recovery of attorneys' fees and costs of action to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

130.   Plaintiff has consented to be a party to this action, pursuant to 29 U.S.C. § 216(b). (see Consent attached to this filed Complaint).

131.   At all times relevant to this action, Plaintiff and all FLSA Opt-Ins were employed by Defendants within the meaning of the FLSA.

132.   At all times relevant to this action, Plaintiffs and all FLSA Opt-Ins were engaged in commerce and/or the production of goods for commerce and/or Defendant were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

133.   Due to Defendant's FLSA violations, Plaintiff  and all FLSA Opt-Ins are entitled to recover from Defendant their unpaid compensation, an additional equal amount as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, reasonable attorneys' fees, and costs of the action, pursuant to

29 U.S.C. § 216(b)§ 6 of the Fair Labor Standards Act, 29 U.S.C.A. § 206, 9 FCA title 29, § 206, provides that every employer shall pay to each of his employees who is engaged in interstate or foreign commerce or in the production of goods for such commerce, wages at specified hourly rates.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the IWML Class, IWPCA Class, and the FLSA Collective, pray for the following relief:

A.    That, at the earliest possible time, the Plaintiff be allowed to give notice of these class actions, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years and/or five years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of Court-supervised notice, been e0mployed by the Defendants as Movers and to pay its employees at an overtime rate of pay.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to "opt out" of this lawsuit if they believe they were paid all wages due.

B.    That, at the earliest possible time, the Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of Court-supervised notice, been employed by the Defendants and to pay its Mover employees at an overtime rate of pay. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join in this lawsuit if they believe they were not paid all wages for work performed.

C.      Unpaid wages and liquidated damages pursuant to 29 U.S.C. § 201 <u>et</u> <u>seq</u>. and the supporting an Illinois Department of Labor and United States Department of Labor regulations;

D.      Unpaid regular wages, and overtime wages pursuant to the IMWL, IWPCA and other state wage laws;

E.      Compensation originating from ANGEL ANDOR MIDWEST company policies, contractual obligations and ERISA requirements owed as a result of unpaid overtime wages;

F.      An injunction requiring Defendants to pay all statutorily-required wages pursuant to Illinois Law;

H.      Certification of this case as a Class action and/or Collective action;

I.      Designation of the Plaintiff as representative of the Class and/or Collective, and counsel of record as Class Counsel;

J.      Issuance of a Declaratory Judgment that the practices complained of in this Complaint are unlawful under Illinois Law, 820 ILCS 105/1 *et seq.* and supporting Illinois Department of Labor regulations and other state wage laws;

K.      Attorneys' fees and costs of this action in accordance with FLSA and Illinois Wage Laws; and

L.      Unpaid wages and liquidated damages pursuant to FLSA, IMWL and supporting Illinois Department of Labor regulations;

M.      Consequential damages;

N.      Issuance of a Declaratory Judgment that the practices complained of in this Complaint are unlawful under Illinois Law, 820 ILCS 105/1 *et seq* and supporting Illinois Department of Labor regulations;.

O.      and costs of this action; and

P.      Such other relief as this Court shall deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: May 18, 2016

Respectfully submitted,

By:      _____-S-John C. Ireland_____
            John C. Ireland

Attorney for the Plaintiffs and Class

The Law Office Of John C. Ireland
636 Spruce Street
South Elgin ILL
60177
       630-464-9675
Facsimile 630-206-0889        attorneyireland@gmail.com